1  ERIC LEVINRAD (State Bar No. 169025)
       elevinrad@wrslawyers.com
2  WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   11400 West Olympic Boulevard, 9th Floor
3  Los Angeles, California 90064-1582
   Telephone:    (310) 478-4100
4  Facsimile:    (310) 479-1422

5  Attorneys for Plaintiff ROAR SPIRITS, LLC
   f/k/a EL BANDIDO YANKEE, LLC
6

7

8

9                    UNITED STATES DISTRICT COURT

10       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12 | ROAR SPIRITS, LLC, a Delaware limited     | Case No.
   | liability company, f/k/a EL BANDIDO       |
13 | YANKEE, LLC,                              | **COMPLAINT FOR JUDICIAL**
   |                                           | **REVIEW**
14 |
   |            Plaintiff,
15 |
   |
16 |     vs.
   |
17 |
   | REBEL WINE CO., LLC, a California
18 | limited liability company,
   |
19 |            Defendants.

20

21

22

23

24

25

26

27

28

Plaintiff Roar Spirits, LLC, f/k/a El Bandido Yankee, LLC ("Plaintiff") for its complaint against defendant Rebel Wine Co., LLC ("Defendant") alleges as follows:

**PRELIMINARY STATEMENT**

1.      On June 30, 2020, Plaintiff filed applications to register the marks EL BANDIDO YANKEE  ("EL BANDIDO YANKEE Mark") and EL BANDIDO YANKEE TEQUILA COMPANY BLANCO and design ("Design Mark," collectively referred to with the EL BANDIDO YANKEE Mark as the "EL BANDIDO YANKEE Marks"):



The application for the EL BANDIDO YANKEE Mark was assigned the Application Serial No. 90028911(the "'911 Application"); and the Design Mark was assigned the   Application Serial No. 90029117 (the "'917 Application.")  (The '911 Application and the '917 Application are collectively referred to as the "Applications.")

2.      Defendant manufactures boxed wines and wine-based seltzers that it sells under the mark BANDIT.  While Defendant only sells wines and wine-based seltzers under the BANDIT mark, that mark is registered for "alcoholic beverages except beers" in class 33.

3.      Defendant opposed Plaintiff's Applications to register the EL BANDIDO YANKEE Marks.  Defendant's opposition was assigned Opposition No.

91268314 ("Opposition").  Defendant's Opposition was largely based on  the fact that its broad registration for "alcoholic beverages except beers" in class 33 encompasses tequilas within its scope.  Based on this, Defendant Opposer asked the TTAB to disregard the numerous and obvious dissimilarities between the BANDIT and EL BANDIDO YANKEE Marks, the fact that they are used on widely disparate alcoholic products (tequila v. boxed wines), and the fact that, as these marks are used in the real world, there is ***no chance*** of any consumer being confused between these marks, as evidenced by the lack of actual confusion, despite the marks having co-existed for a significant period of time.  This is obvious based even on a cursory review of the products:



4.      In any event, the fact that BANDIT'S broad trademark registration includes within its scope tequilas is insufficient on its own to sustain the opposition, and the TTAB erred in  sustaining the Opposition on this basis.  There are thirteen separate factors that the Board was required to consider in adjudicating whether Plaintiff's marks could be registered.  Contrary to the findings of the TTAB, the majority of these factors weighed against Defendant's opposition.   As a result, the TTAB erred in sustaining Defendant's Opposition and denying Plaintiff's registration of the marks.

**PARTIES**

5.      Plaintiff is a Delaware limited liability company duly organized and existing under the laws of the state of Delaware with a place of business at 211 N. Williamsburg Drive, Suite A, Bloomington Illinois, 61704.

6.      On information and belief, Defendant is a limited liability company organized and existing under the laws of California, having a place of business at 100 St. Helena Hwy South, St. Helena, California, 94574.

**JURISDICTION AND VENUE**

7.      The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§1071(b)(1) and (4).

8.      This Court has personal jurisdiction over Defendant because Defendant is a California limited liability corporation with its principal place of business located in the County of Napa.

9.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in the County of Napa.

**FACTS COMMON TO ALL CLAIMS**

**A.      The Trademarks at Issue In This Proceeding**

10.      The trademarks which are the subject of Plaintiff's applications are:

- The EL BANDIDO YANKEE TEQUILA COMPANY BLANCO and Design Mark:



1   for "Blue distilled agave tequilana weber liquor" in Class 33.

2         •    The EL BANDIDO YANKEE mark for "Distilled blue agave liquor" in

3       Class 33.

4       11.    Defendant is the owner of the registered word mark BANDIT for

5   "alcoholic beverages except beers"[1] in Class 33.

6   **B.**    **El Bandido Yankee Tequilas**

7       12.    Plaintiff Roar Spirits, LLC, which was previously known as El Bandido

8   Yankee Tequila Company, LLC,  was co-founded by two former professional

9   athletes, Jim Bob Morris, a former NFL player who played for the Green Bay

10   Packers, and Chris Chelios, a former NHL player who played for the Chicago

11   Blackhawks.

12       13.    The name "El Bandido Yankee" is a reference to a line from the movie

13   Butch Cassidy and the Sundance Kid in which a character in the film says "Some

14   say it's the Bolivian Bandits, and some say it's the Bandidos Yankees." At the time

15   that El Bandido Yankee came up with its name, it was not aware of Defendant's

16   Bandit's wine products.

17       14.    Wines and tequilas are altogether different alcohol products.  Tequila is

18   a distilled spirit liquor, regulated by the CRT in Mexico, that is made from the blue

19   weber agave plant (agave tequilana), using a double (and sometimes triple)

20   distillation process, to create a liquor with a minimum alcohol content to qualify as

21   Tequila in the US of 40% alcohol by volume ("ABV").  In contrast, wines are

22   produced by fermenting grapes, and no distillation process is employed in the

23   manufacture of wines. Additionally, wines have a far lower alcohol content than

24   distilled liquors, typically ranging between 11% and 15% ABV."

25

26           [1] As is discussed in detail below, while Opposer's BANDIT mark is registered for

27   "alcoholic beverages except beers," the undisputed evidence is that Opposer has *never* used this mark for any products other than wines or wine-based hard seltzers, and, in particular, has *never*

28   used this mark for tequila.

15.     El Bandido Yankee tequilas are manufactured by a single distillery in Jalisco, Mexico.  Plaintiff does not, and never has, produced, sold or distributed any wine products, and has no intention of producing, selling or distributing any wine products in the future.  Plaintiff also does not and never has produced, sold or distributed any hard seltzer products (whether tequila-based, wine-based or otherwise), and has no intention of producing, selling or distributing any tequila-based, wine-based, or other types of hard seltzer products of any kind in the future.

C.     **Plaintiff's Product Packaging**

16.     Plaintiff bottles its tequilas in distinctively designed glass bottles, with El Bandido Yankee's name and one of El Bandido Yankee's designs on such bottles, including the words "El Bandido Yankee Tequila Company" on the label.  A 750 ml bottle of El Bandido Yankee tequila, is depicted adjacent to a one liter box of Bandit wine in the following photograph:



17.     Plaintiff does not sell or intend to sell any of its tequila products in tetra-pak boxes or boxes of any other kind and also does not sell any tequila or tequila products in cans.  Specifically, Plaintiff does not produce or sell any kinds of "hard seltzer" products, including, without limitation, any tequila-based hard seltzers, in cans or otherwise.

18.     Plaintiff always includes the words "El" and "Yankee" alongside the

word "Bandido" and typically includes "Tequila Company" on its product packaging. El Bandido Yankee never refers to itself or its product on its product packaging as simply "El Bandido," or "Bandido" without the inclusion of the words "El" and "Yankee." Additionally, all El Bandido Yankee tequila bottles always include its design on its bottles with the El Bandido Yankee product name, consisting of a stylized image of a masked figure ("El Bandido") wearing a traditional cowboy hat ("Yankee").

**D.     Plaintiff's Target Market**

19.     The target market for Plaintiff's El Bandido Yankee tequila products is college Educated 27-54 year olds, with household income over $85,000 per year, who appreciate high quality products with transparency in ingredients and production. Plaintiff's marketing message is around creating elevated experiences, typically within nightlife settings, dinners or events along with a high connection to organized and professional sports – NFL, NHL, NASCAR, to name a few, with events the brand has sponsored. Plaintiff does not market its products to campers, hikers or other outdoors enthusiasts. Indeed, given that El Bandido Yankee tequilas are only sold in large, 750 ml glass bottles, this product is particularly ill-suited to take on a camping or hiking trip.

**E.     Plaintiff's Marketing Efforts and Strategy**

20.     Consistent with its co-founders being former professional athletes, a key part of Plaintiff's marketing strategy for its El Bandido Yankee tequilas is to enter into numerous sponsorship deals with various professional sporting events and athletes. For example, Plaintiff has engaged in the following sports-related marketing activities to promote its El Bandido Yankee tequilas:

- Hula Bowl, January, 2022. Plaintiff hosted tailgating parties, concessions vendor, a barbecue with Blues Hog, and other marketing events, at a cost of approximately $125,000.

- Busch Clash, Memorial Coliseum, Los Angeles, the kickoff event for

Nascar.  Plaintiff threw a Busch Clash party at the bar at the top of the Hotel Indigo in downtown LA, and entertained key account holders for the races on Sunday of that weekend, at an approximate cost of $5,000.

- Irwindale Late Model races – Southwest Series at Irwindale Speedway.  Plaintiff hosted all racing pole awards, including  full El Bandido Yankee signage and tasting at the race track on the Saturday before the Busch Clash, at an approximate cost of $2,000.

- Daytona 500 + Speedweeks Events – El Bandido Yankee sponsorship for Truck, Xfinity, Cup races; tasting activity; sponsorship of the Pit Road Pickers band for 2 concerts during speed weeks, at an approximate cost of $25,000.

- Plaintiff places El Bandido Yankee advertising on SiriusXM Nascar Racing Channel 90 – Front Stretch show featuring Pat Patterson, and is an official sponsor of the show.  The advertising cost on this show for 2022 is $25,000.

- Plaintiff sponsors Extreme Skater Brittan Morris, who participates in Ice Cross, an extreme winter sporting event, at an annual cost of $2,000.

- Plaintiff sponsors MMA Fighter Dustin Jacoby, at an approximate annual cost of $2,000.

- Plaintiff promotes its El Bandido Yankee tequilas at all Chicago Blackhawks hockey games via WGN radio, at an approximate annual cost of $15,000.

- Plaintiff has El Bandido Yankee concession stations throughout Van Andel Arena in Grand Rapids, Michigan for the Grand Rapids Griffins of the AHL, at an approximate annual cost of $20,000.

- Plaintiff participated as an El Bandido Yankee vendor during the BBQ contest at the Big 12 Basketball Championship in Kansas City,

Missouri at an approximate cost of $10,000.

- Plaintiff has promoted its El Bandido Yankee tequilas at numerous Rodeo events, through sponsorships and activations

- Plaintiff promoted its El Bandido Yankee tequilas at the Palm Beach Boat & Yacht Show, at an approximate cost of $17,000.

- Additionally, Plaintiff maintains suites with the Kansas City Chiefs, Green Bay Packers, Chicago Bears and Kansas University, all for promotional purposes.

21.    In addition to marketing its products through the sponsorship of sporting events, venues and athletes, Plaintiff also engages in conventional marketing of its El Bandido Yankee tequilas, such as advertising in magazines, attending trade shows, advertising on the internet and advertising through social media.  Plaintiff's sponsorship of sporting events, venues and athletes makes up approximately 30% of its total annual marketing expenditures.

**F.    El Bandido Yankee Tequila Price Point**

22.    The per bottle price which Plaintiff charges its wholesale distributors for El Bandido Yankee Tequilas ranges from $19-24, depending on the state and expression of tequila.  While both wholesalers and retailers are entitled to sell these products at whatever prices they see fit, Plaintiff recommends that its wholesale distributors sell El Bandido Yankee tequila to their retail customers for $25-39 per bottle depending on price level and expression, and that retailers who sell El Bandido Yankee tequila to consumers by the bottle charge a suggested retail price of $39-44 per bottle. In general, El Bandido Yankee tequila is sold to end user consumers at the price range of between approximately $39 and approximately $50 per 750 ml. bottle. This is a significantly higher price point than the Bandit boxed wine products, which are sold at the retail price ranges of $7-$10 per 1 liter box and $4-$5 per 500 ml box.

**G.      El Bandido Yankee Product Distribution**

23.      Plaintiff sells its El Bandido Yankee tequila products to licensed distributors, who then, in turn, sell those products on a wholesale basis to retail outlets, such as retail stores and bars and restaurants, who then sell the El Bandido Yankee product to the end user consumers.  El Bandido Yankee tequilas are sold by numerous large chain store retailers, such as, for example, BevMo, Total Wine and Jewel-Osco as well as by numerous independent, non-chain retail stores. For example, in the Chicago area, El Bandido Yankee tequilas are sold at Garfield's Liquors and Liquor Barn, which, on information and belief, do not sell Bandit boxed wines.

24.      El Bandido Yankee tequilas are also sold in numerous restaurants and bars.  Of the approximately 1000 licensed accounts selling El Bandido Yankee in Illinois, approximately 50% of the accounts are "on-premise" bars and restaurants that generate 50% of El Bandido's revenue.   For example, El Bandido Yankee tequilas are served at Chicago Cut Steakhouse, Gibson's Steakhouse and Tao as well as at the Fat Rosie's restaurants in the Chicago area.  On information and belief, none of these restaurants serve Bandit Wines.[2]

25.      Additionally, unlike Bandit Wines,  El Bandido Yankee tequilas are not sold in any self-standing Seven-Eleven type convenience stores and are also not sold in any gas station-affiliated convenience stores, such as the Extra Mile convenience stores located at many Chevron gas stations.  On information and belief, neither are El Bandido Yankee tequilas sold by CVS, Rite-Aid or any other similar large drugstore chains.

---

[2] Based the "Wine Locator" search tool maintained on the Banditwines.com website, Bandit Wines appear to be served at very few restaurants, and virtually no "high end" restaurants such as Chicago Cut Steakhouse or Tao and "Taco and Tequila" restaurants such as Fat Rosie's that serve El Bandido Yankee tequila.

**H.     Retail Displays of Liquors Such as El Bandido Yankee Tequilas as Compared to Wines Such as Bandit**

26.     In the retail setting, liquors such as, for example, tequila, gin, vodka and whiskey, are generally displayed separately from both wines and beers in retail stores.  Depending on the size of the store, liquors are generally displayed for sale on different shelves from both wines and beers and are often displayed in different aisles or different sections of the store altogether.

27.     Similarly, on-line retailers of alcohol products typically have liquors listed in a different category on their websites from both wines and beers. For example, the home page of the Bevmo.com website has different drop-down menus for "Wine," "Spirits," "Beer and Hard Seltzer," and other product categories, to enable customers to search for these various product types by category.

**I.     Rebel Wines' Bandit Wine Products**

28.     Defendant uses the BANDIT mark to sell a line of boxed wine products and wine-based hard seltzers.  Defendant affirmatively markets its boxed Bandit wines products to campers, hikers and outdoor enthusiasts.  Indeed, the home page of Defendant's website located at www.banditwines.com recites:

> We love wine and we love to explore beautiful landscapes, so in 2003 we created Bandit. This light-weight container is adventure-ready, keeps our wine fresh and delicious, and uses natural resources responsibly. From dinner around the campfire to back-packing on the Pacific Crest Trail, Bandit is ready for wherever the spirit of adventure leads you. Live well and go explore!

In this vein, the home page of the Bandit Wines website depicts a backpacker with a Bandit Wine box in the packet of his or her backpack (among other images of hikers, campers, and outdoor enthusiasts enjoying Defendant's Bandit boxed wine products):



29.    On information and belief, Defendant has only used the BANDIT mark to sell wines and wine-based hard seltzers, has never used the mark for tequilas or any other liquors, and has no intention of ever doing so. Defendant's Bandit market is registered for a broad range of products (all alcoholic beverages except beers), despite Defendant only actually using that mark, and only actually having the intention of using that mark, on a very small subset of such products (wines and wine-based seltzers).

**J.    Defendant's Contrary Positions Taken in Other Proceedings With Respect to the Similarity, or Lack Thereof, of the Marks at Issue**

30.    In a previous TTAB proceeding, Defendant sought the cancellation of a beer maker's MASKED BANDIT trademark.  When presented with evidence in response to that proceeding of the marks BANDOLERO and LA BANDALERA for tequila, Opposer took the position that the BANDOLERO and LA BANDALERA marks "are not relevant to this case as those are marks distinct in appearance and sound."  The marks Bandalero and La Bandalera are similar sounding to "Bandido" and, like Bandido, mean "Bandit." Defendant's contention in that case that "those are marks distinct in appearance and sound" constitutes strong evidence, if not a binding judicial admission, that, contrary to Defendant's claim in the TTAB proceedings below, the "El Bandido" in the EL BANDIDO YANKEE marks is similarly distinct in appearance and sound from Defendant's BANDIT mark.  In light of these admissions, the TTAB erred in finding the marks to be similar and denying Plaintiff's registration of the EL BANDIDO YANKEE marks on that basis.

31.     Similarly, in another case, Defendant secured the assignment to itself of the mark EL BANDIDO NEGRO for "alcoholic beverages, namely, tequila." Defendant failed to file a section 8 declaration, resulting in the cancellation of the EL BANDIDO NEGRO mark.  Opposer's abandonment of this mark evidences the dissimilarity of the EL BANDIDO NEGRO mark for tequila and the BANDIT mark, and, by extension, the dissimilarity of the EL BANDIDO YANKEE marks for tequila and the BANDIT mark.

**K.     Numerous Other Third Parties Use the Term Bandit or Variations Thereof on Food and Beverage Related Products and Services**

32.     Defendant is not the only party to use the BANDIT mark for its products.  To the contrary, numerous other entities use the mark Bandit for the sale of various food and beverage-related products and services.  These include BURGER BANDIT in International Class 043 (for "Fast-food restaurant services; Restaurant and cafe services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Restaurants featuring home delivery; Self-service restaurants; Take-out restaurant services"); INCHWORM BANDIT in International Class 33 (for "Alcoholic beverages containing fruit; Alcoholic beverages, namely, tequila, jalapeno, basil, pina, and lime; Alcoholic fruit beverages; Alcoholic fruit cocktail drinks; Prepared alcoholic cocktail."); AGAVE BANDIDO  in International Class 43 (for "Bar services; Café services; Catering services; Restaurant services; Mobile restaurant services; Pop-up restaurant services"); PIZZA BANDIT  in International Class 43 (for "Restaurant and bar services"); LOCOS BANDITOS in International Class 30 (for "Food, namely, tea, tea extracts, tea-based beverages, coffee-based beverages, snack foods in the nature of wheat based snack food, corn based snack food; prepared and packaged meals and food package combinations consisting primarily of pasta or rice"); BANDIDOS TAQUERIA B in International Class 43 (for "Restaurant and bar service, including

restaurant carryout and catering services"); BURRITO BANDITO in International Class 43 for "Restaurant; Restaurant services"); FORAJIDO (which translates to "bandit", "outlaw" or "fugitive") in International Class 33 (for "Alcoholic beverages, namely, distilled spirits"); BANDITOS CANTINA in International Class 43 (for "Restaurant, bar and catering services"); SALTY BANDITA in International Class 43 (for "Restaurants; restaurant services; restaurant, bar, and catering services; restaurant and catering services; catering in fast-food cafeterias"); and BANDIDOS in International Class 43 for "Mexican restaurant and bar services.")

33.     Indeed, a simple Google search for "bandit alcohol reveals numerous types of alcoholic beverages sold under marks which include the use of the term "Bandit," including:

- Time Bandit vodka
- Bandit's Rum
- Goofy Bandit Espressotini
- Bandit's Traditional Moonshine
- Bandit's Coffee Moonshine
- Penguin Bay Blackberry Bandit (blackberry wine)
- The Bandit – the BX Press Cidery (cider)
- Bandit Gypsy Hill Brewing (pale ale)
- Apple Bandit (ciders)
- Bandit Brewing (beers)
- Bandit Queen Barrel Aged Peach Sour
- Barrel Bandit (bourbon)
- Bandits Coffee, Apple Pie and Oatmeal Cookie Moonshine
- Westend The Barrel Bandit (wine)
- Houghton The Bandit Shiraz and Cabernet (wine)

**L.     The Trademark Trial and Appeal Board Proceedings**

34.     On March 23, 2021, Defendant filed a Notice of Opposition to

Plaintiff's application for the registration of the EL BANDIDO YANKEE marks. Defendant's Opposition contends that Plaintiff "is not entitled to register the EL BANDIDO Marks and Applicant's Applications should be denied in accordance with Section 2(d) of the Trademark Act of 1946, 15 U.S.C. §1052(d)."

35.   Defendant's Opposition is based on the contention that the EL BANDIDO YANKEE Marks "are likely to cause confusion, mistake or to deceive the public because they are virtually identical to Opposer's BANDIT Mark and the goods for which Opposer has registered, and on which Opposer uses Opposer's BANDIT Mark are identical, substantially similar or related to the goods identified in Applicant's Applications, namely, 'distilled blue agave liquor' and 'blue distilled agave tequilana weber liquor,' and said goods are purchased by the same group of consumers."

36.   The proceeding was assigned Opposition No. 91268314.

37.   Plaintiff, in its Answer, denied Defendant's allegations.

38.   On July 18, 2023, the Board issued a final decision sustaining the opposition filed by Defendant.  A true and correct copy of the TTAB's ruling is attached as Exhibit 1. That decision is subject to review by this Court under § 21(b) of the Federal Trademark Act, 15 U.S.C. § 1071(b).

### FIRST CLAIM FOR RELIEF

### (Judicial Review of Trademark Trial and Appeal Board Final Decision)

39.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 38 as if set forth fully herein.

40.   As a cause of action and ground for relief against Defendant, Plaintiff seeks, in part, a *de novo* judicial review pursuant to § 21(b) of the Federal Trademark Act, 15 U.S.C. § 1071(b), of the final decision rendered by the Board in *Rebel Wine Co., LLC v. ROAR Spirits, LLC*, Opposition No. 91268314, on the following grounds:

a.   The TTAB erred in finding Plaintiff's and Defendant's

respective marks to be similar in their entireties as to appearance, sound, connotation, and commercial impression to support a likelihood of confusion, despite the significant dissimilarities between the respective marks, including significant dissimilarities in connotation and commercial impression, which, alone requires a finding of dissimilarity between the marks. *Cf Champagne Louis Roederer S.A. v. Delicato Vineyards*, 148 F.3d 1373, 47 USPQ2d 1459, 1460 (Fed. Cir. 1998) (affirming dismissal of opposition where the marks "CRISTAL" for champagne and "CRYSTAL CREEK" for wine evoked different images in the minds of relevant consumers.).

    b.    The TTAB erred by failing to accord sufficient weight to the absence of evidence of actual confusion, erroneously finding such evidence to be neutral, rather than to weigh against a finding of a likelihood of confusion.

    c.    Given the evidence of the significantly different price points between Plaintiff's high-end tequila products, and Defendant's inexpensive boxed wine products, the TTAB erred in finding that the conditions under which and buyers to whom sales are made (i.e. "Impulse" v. Careful, Sophisticated Purchasing) did not weigh in favor of a finding of lack of confusion.

    d.    While correctly finding that Defendant had failed to produce sufficient evidence to establish the commercial strength of its mark, the TTAB erred in finding Defendant's mark to be conceptually strong, given the evidence of substantial third-party use of such mark, or close variations thereof, on food and beverage related products and service, including alcoholic beverages.

    e.    The TTAB erred in finding that Defendant was not estopped from asserting the similarity of Plaintiff's El Bandido Yankee marks with its Bandit mark, after having taken the position in a different proceeding, in which it prevailed, that the marks BANDOLERO and LA BANDALERA for tequila were "not relevant to this case as those are marks distinct in appearance and sound."

    f.    The TTAB erred in finding that the similarities between

Plaintiff's EL BANDIDO YANKEE TEQUILA COMPANY BLANCO design mark



and Defendant's BANDIT word mark weighed in favor of a finding that confusion is likely.

        g.     The TTAB erred in finding that the similarities between Plaintiff's EL BANDIDO YANKEE word mark and Defendant's BANDIT word mark weighed in favor of a finding that confusion is likely.

        h.     As a result of the above-described errors, the TTAB erred in finding that the weighing of the *DuPont* factors supported a likelihood of confusion between Plaintiff's and Defendant's respective marks.

     41.     Plaintiff will introduce the following additional evidence to this Court for *de novo* consideration:

        a.     Survey evidence establishing that there is no likelihood of confusion between the parties' respective marks.

        b.     Additional evidence establishing the conceptual weakness of Defendant's BANDIT mark.

        c.     Evidence that Defendant never used the Bandit mark for any tequila products and has never had any intention of doing so.

     42.     The TTAB's decision was contrary to pertinent law, not supported by

substantial evidence and/or was in error in light of the evidence of record with the TTAB, the allegations in this Complaint, and additional evidence to be submitted by Plaintiff as set forth above. Therefore, the TTAB's July 18, 2023 decision sustaining Opposition No. 91268314 should be reversed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of a judgment ordering that:

The Court reverse the final decision of the Board in the Opposition and, in accordance with § 37 of the Federal Trademark Act, 15 U.S.C. § 1119, direct the USPTO to register each of Plaintiff's EL BANDIDO YANKEE Marks which are the subject of the Applications.

DATED:  September 19, 2023          WOLF, RIFKIN, SHAPIRO,
                                    SCHULMAN & RABKIN, LLP


                                    By:      /s/ Eric Levinrad
                                    _____
                                          ERIC LEVINRAD
                                    Attorneys for Plaintiff ROAR SPIRITS, LLC
                                    f/k/a EL BANDIDO YANKEE, LLC