J. SCOTT GERIEN (SBN 184728)
sgerien@dpf-law.com
JOY L. DURAND (SBN 245413)
jdurand@dpf-law.com
DICKENSON, PEATMAN & FOGARTY
1500 First Street, Suite 200
Napa, California 94559
Telephone: (707) 261-7000
Facsimile: (707) 340- 7239

*Attorneys for Defendant,*
*Rebel Wine Co., LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ROAR SPIRITS, LLC, A DELAWARE LIMITED LIABILITY COMPANY, F/K/A EL BANDIDO YANKEE, LLC

Plaintiff,

vs.

REBEL WINE CO., LLC, a California limited liability company,

Defendant.

**Case No. 4:23-cv-04809-HSG**

**DEFENDANT REBEL WINE CO., LLC'S MOTION FOR SUMMARY JUDGMENT**

Date: August 15, 2024
Time: 2:00 p.m.
Crtrm: 2, 4th Floor
Judge: Hon. Haywood S. Gilliam Jr.

Complaint Filed: September 19, 2023

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 2

II. REBEL'S STATEMENT OF UNDISPUTED FACTS ..... 2

III. LEGAL STANDARDS ..... 4

A. Summary Judgment Standard ..... 4

B. Standard for Reviewing the TTAB's Decision ..... 5

IV. ARGUMENT ..... 6

A. Rebel has Priority ..... 6

B. Likelihood of Confusion ..... 6

1. Rebel's Goods and Roar's Goods Are Legally Identical ..... 7

2. The Parties' Marketing Channels Are Identical ..... 9

3. Degree of Care Likely to Be Exercised By the Consumer ..... 10

4. Strength of Marks ..... 11

a. Rebel's BANDIT Mark is Conceptually Strong ..... 11

b. Rebel's BANDIT Mark is Moderately Strong in Terms of Commercial Strength ..... 12

5. Similarity of Marks ..... 14

a. Rebel's BANDIT Mark and Roar's EL BANDIDO YANKEE and Design Mark are Confusingly Similar ..... 15

b. Rebel's BANDIT Mark and Roar's EL BANDIDO YANKEE Mark are Confusingly Similar ..... 20

6. Actual Confusion ..... 22

7. Weighing the Likelihood of Confusion Factors ..... 22

V. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Cases**


*Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975) ....14

*Am. Lebanese Syrian Assoc. Charities Inc. v. Child Health Research Inst.*, 101 USPQ2d 1022, 1028 (TTAB 2011) ....10

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) .... passim

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ....4

*B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015) ....5

*Barbaras Bakery, Inc. v. Barbara Landesman*, 82 U.S.P.Q.2d 1283, 1287 (TTAB 2007) ....22

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) ....7, 11

*CBS, Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 199 (Fed.Cir.1983) ....9

*Century 21 Real Estate v. Century Life of Am.*, 970 F.2d 874, 877, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992) ....8, 15

*Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1258-59 (Fed. Cir. 2011) ....15

*Clarke v. TNSG Health Co.*, No. 2:21-CV-03463-HDV-RAO, 2024 WL 2794103, at *5, n.3 (C.D. Cal. May 15, 2024) ....22

*Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) ....14

*Combe Inc. v. Dr. Aug. Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 445–46 (E.D. Va. 2019) ....9

*Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) ....6, 15, 18

*Dooyeaon Corp. v. Kiko S.P.A.*, No. 1-16-CV-01284, 2017 WL 7052284 (E.D. Va. Sept. 5, 2017) ....5

*Double Coin Holdings, Ltd. v. Tru Dev.*, 2019 USPQ2d 377409, at *6 (TTAB 2019) ....9

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 n. 7 (9th Cir. 1998) ....12

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 457, 465 (N.D. Cal. 1991) ....10

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291-1292 (9th Cir. 1992) ....................15

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002) ................................11, 14

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032–33 (9th Cir. 2010) ....................................................................................................11, 14

*Garan, Inc. v. Manimal, LLC*, No. 3:20-CV-00623-IM, 2022 WL 225060 (D. Or. Jan. 25, 2022) ....................................................................................................................5

*Giersch v. Scripps Networks Inc.*, 90 USPQ2d 1020, 1027 (TTAB 2009) ......................................10

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) ................................11, 14

*Guess?, Inc. v. Tres Hermanos*, 993 F. Supp. 1277, 1281 (C.D. Cal. 1997) ..............................8, 15

*Hainline v. Vanity Fair, Inc.*, 301 F. App'x 949, 953 (Fed. Cir. 2008) ..............................................8

*Hancock v. Am. Steel & Wire Co. of N.J.*, 203 F.2d 737, 97 USPQ 330, 332 (CCPA 1953)....................................................................................................................20, 21

*Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002) .....................................................................................................................9

*HMH Publ'g Co. v. Lambert*, 482 F.2d 595, 599 n.6 (9th Cir. 1973) ............................................10

*Hunter Indus., Inc. v. The Toro Co.*, 110 USPQ2d 1651, 1661 (TTAB 2014) ..........................17, 21

*In re Assoc. of the U.S. Army*, 85 USPQ2d 1264, 1268 (TTAB 2007) ..........................................14

*In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1961 (TTAB 2016) ..........................................17

*In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1833 (Fed. Cir. 2007) ......................................13

*In re Bercut-Vandervoort & Co.*, 229 USPQ 763, 765-766 (TTAB 1986)......................................12

*In re Central Soya Co., Inc.*, 220 USPQ 914, 916 (TTAB 1984) ..................................................17

*In re Charger Ventures LLC*, 2023 USPQ2d 451, at *7 (Fed. Cir. 2023) ......................................22

*In re Code Consultants, Inc.*, 60 USPQ2d 1699, 1702 (TTAB 2001) ............................................19

*In re Consumer Protection Firm PLLC*, 2021 USPQ2d 238, at *21 n.28 (TTAB 2021)..........................................................................................................................19

*In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973)...........................................6, 7

*In re i.am.symbolic*, 866 F.3d 1315, 123 USPQ2d 1744, 1751 (Fed. Cir. 2017)............................14

*In re Johanna Farms, Inc.*, 222 USPQ 607, 617 (TTAB 1984)................................................18, 21

*In re Jump Designs*, 80 USPQ2d 1370, 1374 (TTAB 2006) ....................8

*In Re Max Cap. Grp. Ltd.*, 93 USPQ2d 1243, 1244 (TTAB 2010) ....................9

*In re Narwood Prods., Inc.*, 223 USPQ 1034, 1034 (TTAB 1984) ....................17

*In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985)....................15

*In re New York Times Co.*, 2023 USPQ2d 392, at *22 (TTAB 2023) ....................19

*In re St. Helena Hosp.*, 774 F.3d 747,113 USPQ2d 1082, 1085....................14

*In re Thor Tech, Inc.*, 90 USPQ2d 1634, 1635 (TTAB 2009) ....................17

*In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) ....................9, 10

*In re Yawata Iron & Steel Co.*, 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968) ....................9

*Jay-Zee, Inc. v. Hartfield-Zodys, Inc.* 207 USPQ 269 (TTAB 1980) ....................18

*JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1112 (9th Cir. 2016)....................10

*Jules Berman & Assoc., Inc. v. Consol. Distilled Prods., Inc*, 202 USPQ 67, 70 (TTAB 1979)....................12

*Kappos v.Hyatt*, 566 U.S. 431, 446 1320, 1336 (2012) ....................5

*Kellogg Co. v. Pack-em Enterprises Inc.*, 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991)....................13

*Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980)....................14

*Massey Junior Coll., Inc. v. Fashion Inst. of Tech.*, 492 F.2d 1399, 181 USPQ 272, 276 (CCPA 1974)....................15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)....................4

*Meier's Wine Cellars, Inc. v. Meyer Intellectual Properties Limited*, Cancellation No. 9204483, 2008 WL 902837, at *7 (TTAB 2008)....................13

*Monster Energy Co. v. Chun Hua Lo*, 2023 USPQ2 87, at *11 (TTAB 2023)....................12, 15

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) ....................12

*New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ....................22

*Octocom Sys., Inc. v. Hous. Comput. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ....................7

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) ....................................8, 15

*Packard Press, Inc. v. Hewlett-Packard Co*., 227 F.3d 1352, 56 USPQ2d 1351, 1354 (Fed. Cir. 2000) ..........................................................................................................14

*Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005).......................................................16, 20

*Paula Payne Prods. Co. v. Johnson Publ'g Co.,* 473 F.2d 901, 902 (CCPA 1973) ..........................8

*Phillips Petroleum Co. v. C. J. Webb, Inc.*, 170 USPQ 35, 36 (CCPA 1971) ................................21

*Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ..........................................................................................................11

*Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, (W.D. Wash. 2003), aff'd, 376 F.3d 894 (9th Cir. 2004)..........................................................................................14

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) ....................................7, 22

*Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626, 222 USPQ 741, 743 (Fed. Cir. 1984) ..........................................................................................................5

*Quiktrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 2021 USPQ2d 35, at *2-3 (Fed. Cir. 2021) ..........................................................................................................14

*Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1984, 1899 (Fed. Cir. 2000)....................11

*Safeway Inc. v. Rok Drinks LLC*, No. 9206703, 2020 WL 20093401, at *5 (TTAB 2020)..........................................................................................................10

*Seacret Spa Intl. v. Lee*, 1:15cv405(JCC/IDD), 2016 WL 880367, at *3 (E.D. Va. 2016)..........................................................................................................7

*Solid State Design Inc.*, 125 USPQ2d 1409, 1413 (TTAB 2018)......................................................8

*Stark v. Diageo Chateau & Estate Wines Co.*, 907 F.Supp.2d 1042, 1057 (N.D. Cal. 2012)..........................................................................................................9

*Stone Lion Cap. Partners, LP v. Lion Cap. LLP*, 746 F.3d 1317, 1323 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) ...........................................................................7, 17, 21

*Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005) ..................................7

*Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015)..................................8

*Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014).....................................5

*Theorem, Inc. v. Citrusbyte, LLC*, No. CV 21-4660-GW-AGRX, 2021 WL 5750238, at *3 (C.D. Cal. Nov. 16, 2021) ..........................................................................................................8

*Thistle Class Ass'n v. Douglass & McLeod, Inc.*, 198 USPQ 504, 511 (TTAB 1978)....................20

*Weider Publ'ns, LLC v. D&D Beauty Care Co.*, 109 USPQ2d 1347, 1356 (TTAB 2014)............................................................................................................................8

*Zobmondo Ent., LLC v. Falls Media, LLC,* 602 F.3d 1108, 1113 (9th Cir. 2010)..........................12

*Zucrum Foods, LLC v. Marquez Brothers, Intern., Inc.,* ..................................................................5

**Statutes**

15 U.S.C. § 1052(d) ..................................................................................................3, 6

15 U.S.C. § 1071(b) ..................................................................................................5, 9

15 U.S.C. § 1071(b)(1)..................................................................................................5

15 U.S.C. § 1071(b)(3)..................................................................................................5

15 U.S.C. §1051(b) ......................................................................................................3

**Other Authorities**

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 21:20 (5th ed.)....................................7

**Rules**

Fed. R. Civ. P. 56(c)......................................................................................................4

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 15, 2024, at 2:00 p.m., or as soon as the matter may be heard, in Courtroom 2, 4th floor of the United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Oakland, California 94612, the Honorable Haywood S. Gilliam Jr. presiding, Defendant Rebel Wine Co., LLC ("Rebel") will move the Court for an order of summary judgment against Plaintiff Roar Spirits, LLC's ("Roar") claim, namely Judicial Review of the Trademark Trial and Appeal Board ("TTAB") decision granting Rebel's opposition to registration of Roar's trademark applications. The basis for Rebel's summary judgment motion is that there is no genuine dispute as to any material fact as to likelihood of consumer confusion between Roar's applied-for EL BANDIDO YANKEE marks for "distilled blue agave liquor" and "blue distilled agave tequilana weber liquor" and Rebel's registered BANDIT mark for "alcoholic beverages except beers," and therefore Roar's trademark applications for the EL BANDIDO YANKEE marks should be denied as a matter of law and the decision of the TTAB upheld. This motion is based on this Notice of Motion, the Memorandum and Points of Authorities below, the Declaration of Joy Durand and accompanying exhibits, the record in the United States Patent and Trademark Office, all pleadings and papers filed in this action, and all other matters or arguments that may be presented in connection with this motion.

DATED: July 11, 2024 DICKENSON, PEATMAN & FOGARTY

By: ______________________________

J. Scott Gerien
sgerien@dpf-law.com
Joy L. Durand
jdurand@dpf-law.com
1500 First Street, Suite 200
Napa, CA 94559
Tel. No.: (707) 261-7000

*Attorneys for Defendant,*
*Rebel Wine Co., LLC*

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, Defendant, Rebel Wine Co., LLC ("Rebel"), by and through its attorneys of record, moves for summary judgment against Plaintiff Roar Spirits, LLC's ("Roar") claim, namely Judicial Review of Trademark Trial and Appeal Board ("TTAB") Decision.

This motion should be granted because there is no genuine dispute as to any material fact as to likelihood of consumer confusion between Roar's applied-for EL BANDIDO YANKEE marks for "distilled blue agave liquor" and "blue distilled agave tequilana weber liquor" and Rebel's registered BANDIT mark for "alcoholic beverages except beers" and the EL BANDIDO YANKEE trademark applications should be denied as a matter of law. This Motion for Summary Judgment is only based upon Rebel's trademark registration and registered rights for BANDIT and not Rebel's common law trademark rights in BANDIT.[1]

Pursuant to well-established, long-standing precedent in actions addressing the registrability of a trademark, as opposed to a claim of trademark infringement based on use, the factfinder must make its findings based on the marks as set forth in the trademark registration and trademark applications as filed with the U.S. Patent and Trademark Office ("PTO"), and not as to how the marks are used in the marketplace. There has been no change to Rebel's BANDIT trademark registration or Roar's EL BANDIDO YANKEE trademark applications since the TTAB decision which is being appealed. Accordingly, there is no dispute of material fact as to the identical nature of the goods and marketing channels, the lack of sophistication of consumers, or the similarity of marks based on the registration and applications at issue, and the Court can issue summary judgment based on these factors alone. Furthermore, Roar cannot provide and has not provided any additional evidence related to the likelihood of confusion factors which can be considered material so as to overcome a finding of summary judgment.

## II. REBEL'S STATEMENT OF UNDISPUTED FACTS

Rebel is the owner of U.S. Trademark Registration No. 3974340 for the mark BANDIT for

[1] Should this matter proceed to trial, Rebel reserves it's right to also pursue its likelihood of confusion claims based on Rebel's common law rights in the BANDIT trademark for wine.

"[a]lcoholic beverages except beers" in International Class 33 (the "BANDIT Registration"). Declaration of Joy Durand in Support of Defendant Rebel Wine Co., LLC's Motion for Summary Judgment ("Durand Decl.") ¶1, Exh. A; 7 TTABVUE 3, 10.[2] The BANDIT Registration issued on June 7, 2011 and is valid and subsisting and has not been challenged in this proceeding. Durand Decl. ¶1, Exh. A; 7 TTABVUE 3, 10.

On June 30, 2020, Roar filed U.S. Application Serial No. 90028911 to register the mark EL BANDIDO YANKEE for "[d]istilled blue agave liquor" (the "'911 EL BANDIDO YANKEE Application") and U.S. Application Serial No. 90029117 to register the mark EL BANDIDO YANKEE TEQUILA COMPANY BLANCO and Design for "[b]lue distilled agave tequilana weber liquor" (the "'117 EL BANDIDO YANKEE and Design Application")[3] (the marks reflected in the '911 Application and '117 Application are referred to collectively as the "EL BANDIDO YANKEE Marks" and the '911 EL BANDIDO YANKEE Application and the '117 EL BANDIDO YANKEE and Design Application are referred to collectively as the "EL BANDIDO YANKEE Applications").[4] Durand Decl. ¶¶3-4, Exhs. B-C. The EL BANDIDO YANKEE Applications were filed based upon Roar's alleged intent to use the marks in commerce under Trademark Act Section 1(b), 15 U.S.C. §1051(b). Durand Decl. ¶¶3-4, Exhs. B-C.

Rebel opposed registration of Roar's marks under Trademark Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), on the ground that Roar's EL BANDIDO YANKEE Marks, as applied to the goods identified in Roar's EL BANDIDO YANKEE Applications, so resemble Rebel's BANDIT mark, registered for "[a]lcoholic beverages except beers," as to be likely to cause confusion, mistake

---

[2] Citations to the record in the opposition proceeding include citations to the publicly available documents in TTABVUE, the TTAB's electronic docketing system, available at https://ttabvue.uspto.gov/ttabvue/v?qt=adv&procstatus=All&pno=91268314&propno=&qs=&propnameop=&propname=&pop=&pn=&pop2=&pn2=&cop=&cn=. The number preceding "TTABVUE" corresponds to the docket entry number; the number(s) following "TTABVUE" refer to the page number(s) of that particular docket entry, if applicable.

[3] In the '117 Application, "TEQUILA COMPANY" and "BLANCO" are disclaimed.

[4] The '911 Application also recites goods in International Classes 18, 20, 21 and 25. Durand Decl. ¶3, Exh. B. However, Rebel only opposes registration of Roar's EL BANDIDO YANKEE mark for the goods in International Class 33.

or deception. Durand Decl. ¶5, Exh. D; 1 TTABVUE.

The TTAB made findings on the similarity of the parties' goods, Durand Decl. ¶11, Exh. J at 12-17; the similarity of the parties' trade channels, Durand Decl. ¶11, Exh. J at 17-18; the conditions under which and buyers to whom sales are made, Durand Decl. ¶11, Exh. J at 18-19; the strength of Rebel's BANDIT mark, Durand Decl. ¶11, Exh. J at 19-29; the similarity of the parties' marks, Durand Decl. ¶11, Exh. J at 29-45; the absence of actual confusion, Durand Decl. ¶11, Exh. J at 45-48; and the extent of potential confusion, Durand Decl. ¶11, Exh. J at 48-49. After considering all of the factors for which there had been evidence and arguments, the TTAB found that confusion between Roar's EL BANDIDO YANKEE Marks as to the goods set forth in the EL BANDIDO YANKEE Applications is likely with respect to Rebel's BANDIT mark as to the goods set forth in the BANDIT Registration and granted Rebel's Opposition. Durand Decl. ¶11, Exh. J at 50; 31 TTABVUE.

## III. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the [litigation] . . . will properly preclude the entry of summary judgment." *Id.* at 248.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c). The purpose of summary judgment is one of judicial economy, that is, to save the time and expense of a useless trial where no genuine issue of material fact remains and more evidence than is already available in connection with the summary judgment motion could not

reasonably be expected to change the result. *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626, 222 USPQ 741, 743 (Fed. Cir. 1984) (finding summary judgment appropriate in the context of oppositions to trademark registration).

**B. Standard for Reviewing the TTAB's Decision**

Pursuant to 15 U.S.C. § 1071(b)(1), a party may initiate a civil action in the district court to contest a TTAB decision that a mark is or is not registrable. In a § 1071(b) action, the district court acts as the finder of fact and has authority independent of the PTO to grant or cancel registrations. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014).; *see also Zucrum Foods, LLC v. Marquez Brothers, Intern., Inc*., No. C 10-0123 PJH, 2011 WL 2118653, at *3 (N.D. Cal. May 27, 2011) (finding that in a § 1071(b) action, "the district court is an appellate reviewer of facts found by the TTAB and is also a fact-finder based on new evidence introduced to the court."). The parties to the action have the right to admit the PTO record as well as any new evidence not presented to the PTO that is admissible under the Federal Rules of Evidence and Civil Procedure. *Swatch*, 739 F.3d at 155; *see also* 15 U.S.C. § 1071(b)(3).

If no new evidence is presented that relates to a disputed factual question, then the district court must apply the Administrative Procedure Act's substantial evidence standard to the PTO's findings of fact. *See Kappos v. Hyatt*, 566 U.S. 431, 446 1320, 1336 (2012) ("If new evidence is presented on a disputed issue of fact, the district court must make de novo factual findings that take account of both the new evidence and the administrative record before the PTO."); *see also Dooyeaon Corp. v. Kiko S.P.A.*, No. 1-16-CV-01284, 2017 WL 7052284 (E.D. Va. Sept. 5, 2017) (granting summary judgment where the plaintiff presented no new evidence and the TTAB's decision was supported by substantial evidence).

However, when a party presents new evidence, the district court resolves the issue of registration de novo without deference to the TTAB decision. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015); *see also Garan, Inc. v. Manimal, LLC*, No. 3:20-CV-00623-IM, 2022 WL 225060 (D. Or. Jan. 25, 2022) (granting summary judgment where the plaintiff presented new evidence).

///

Under either standard, summary judgment as to likelihood of confusion as between the BANDIT Mark as set forth in the BANDIT Registration and the EL BANDIDO YANKEE Marks as set forth in the EL BANDIDO YANKEE Applications is appropriate as a matter of law.

## IV. ARGUMENT

To prevail in an opposition proceeding under § 2(d) of the Lanham Act, a plaintiff must establish: (1) priority; and (2) likelihood of confusion. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000).

### A. Rebel has Priority

Rebel has shown, and Roar does not contest, priority as between the BANDIT mark and the EL BANDIDO YANKEE Marks. Durand Decl. ¶¶1-3, Exhs. A-C; 7 TTABVUE 3, 10. The BANDIT Registration issued on June 7, 2011, and Roar's intended use EL BANDIDO YANKEE Applications were filed on June 30, 2020. Durand Decl. ¶¶1-3, Exhs. A-C; 7 TTABVUE 3, 10. Accordingly, there is no genuine dispute of fact as to Rebel's priority.

### B. Likelihood of Confusion

Trademark Act Section 2(d) prohibits the registration of a mark that:

> [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive.

Although the TTAB's decision was based on the factors from *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973), this Circuit looks to the factors from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) to determine likelihood of confusion, namely: 1) proximity of the goods; 2) marketing channels used; 3) degree of care likely to be exercised by the consumer; 4) strength of the mark; 5) similarity of the marks; 6) evidence of actual confusion; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. The *du Pont* and *Sleekcraft*

tests for likelihood of consumer confusion are essentially the same.[5]

The *Sleekcraft* test for likelihood of confusion is pliant and "[s]ome factors are much more important than others, [with] the relative importance of each individual factor [being] case-specific." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). Although some *Sleekcraft* factors "will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Id.* "Because the factors are 'fluid,' a 'plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them.'" *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005)).

**1. Rebel's Goods and Roar's Goods Are Legally Identical**

In the context of an opposition proceeding to the registration of a trademark where the opposer is asserting ownership of a U.S. trademark registration, it is well settled, as was stated by the TTAB, that the determination regarding the similarity of the goods is based upon how the goods are set forth in the respective trademark registration and trademark application at issue, regardless of how the marks may actually be used in the marketplace and the specific goods on which the marks appear in the marketplace. Durand Decl. ¶11, Exh. J at 12-13; *see also Garan, Inc.* 2022 WL 225060 at *7 ("for registration purposes, this Court, like the TTAB, looks 'within the four corners of the application'") (*quoting Seacret Spa Intl. v. Lee*, 1:15cv405(JCC/IDD), 2016 WL 880367, at *3 (E.D. Va. 2016)); *Stone Lion Cap. Partners, LP v. Lion Cap. LLP*, 746 F.3d 1317, 1323 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting *Octocom Sys., Inc. v. Hous. Comput. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("'[T]he question of registrability of an applicant's mark must be decided on the basis of the identification of goods [or services] set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed.'"));

---

[5] See 5 McCarthy on Trademarks and Unfair Competition § 21:20 (5th ed.) ("A district court review of the T.T.A.B. is not an "appeal" in the traditional sense: it is a fresh and de novo look at the issues. For this reason, a district court will usually use the factors utilized in that circuit."). While not completely identical, the *Sleekcraft* factors mirror the *du Pont* factors used by the TTAB.

*Theorem, Inc. v. Citrusbyte, LLC*, No. CV 21-4660-GW-AGRX, 2021 WL 5750238, at *3 (C.D. Cal. Nov. 16, 2021) ("The determination of the likelihood of confusion by the USPTO focuses on the application and registrations rather than on real-world conditions. . ."); *see also Paula Payne Prods. Co. v. Johnson Publ'g Co.,* 473 F.2d 901, 902 (CCPA 1973) ("Trademark cases involving the issue of likelihood of confusion must be decided on the basis of the respective descriptions of goods.").

"[T]he goods … of the parties need not be similar or competitive, or even offered through the same channels of trade to support a holding of likelihood of confusion." *Weider Publ'ns, LLC v. D&D Beauty Care Co.*, 109 USPQ2d 1347, 1356 (TTAB 2014), appeal dismissed per stipulation, No. 2014-1461 (Fed. Cir. Oct. 10, 2014). However, where the goods at issue are identical, this factor strongly weighs in favor of a finding of likelihood of confusion and the similarity of the marks at issue need not be great. *See Century 21 Real Estate v. Century Life of Am.*, 970 F.2d 874, 877, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992) ("When marks would appear on virtually identical goods . . . , the degree of similarity necessary to support a conclusion of likely confusion declines."); *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993); ("A diminished standard of similarity is . . . applied when comparing the marks of closely related goods."); *Guess?, Inc. v. Tres Hermanos*, 993 F. Supp. 1277, 1281 (C.D. Cal. 1997) ("[A] lesser degree of similarity between two parties' marks is required when the marks are applied to identical goods or services.").

Here, the recited goods in Rebel's BANDIT registration are "alcoholic beverages except beers." Durand Decl. ¶2, Exh. A; 7 TTABVUE 3, 10. The identified goods in the '911 Application are "distilled blue agave liquor," and the identified goods in the '117 Application are "blue distilled agave tequilana weber liquor." Durand Decl. ¶¶3-4, Exhs. B-C. As such, the parties' respective goods are legally identical because "where the goods in an application or registration are broadly described, they are deemed to encompass 'all the goods of the nature and type described therein . . .'" *In re Solid State Design Inc.*, 125 USPQ2d 1409, 1413 (TTAB 2018) (*quoting In re Jump Designs*, 80 USPQ2d 1370, 1374 (TTAB 2006)); *see also Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015); *see also Hainline v. Vanity Fair, Inc.,* 301 F. App'x 949, 953 (Fed. Cir. 2008) (affirming TTAB decision sustaining opposition based in part on the conclusion that the "similarity of the goods" factor weighed heavily in favor of a likelihood of confusion because

the goods identified in the registration and applications were legally identical).

Where, as here, the parties' goods are legally identical, this factor weighs strongly in favor of a finding of likelihood of confusion. *See In Re Max Cap. Grp. Ltd.*, 93 USPQ2d 1243, 1244 (TTAB 2010) (where services as identified in the application and registrations were legally identical, the similarity of the services factor weighed heavily in favor of a finding of likelihood of confusion). The real-world marketplace use of the marks at issue in this case is neither relevant nor material to this opposition and registrability analysis. *See Combe Inc. v. Dr. Aug. Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 445–46 (E.D. Va. 2019), aff'd, 851 F. App'x 357 (4th Cir. 2021) ("[A] district court in a § 1071(b) action should not determine that an applied-for mark is not likely to cause confusion based on how the mark is currently used in the marketplace unless the registration application limits the markholder to such usage.").

As the goods are legally identical, there is no dispute that this factor supports likelihood of confusion as a matter of law.

**2. The Parties' Marketing Channels Are Identical**

The *Sleekcraft* "marketing channels" factor considers how and to whom the respective parties' goods are sold. *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F.Supp.2d 1042, 1057 (N.D. Cal. 2012). Here, there are no trade channel or purchaser restrictions in Rebel's BANDIT Registration or the EL BANDIDO YANKEE Applications. Durand Decl. ¶¶2-4, Exhs. A-C; 7 TTABVUE 3, 10. Because the goods described in Roar's EL BANDIDO YANKEE Applications and Rebel's BANDIT registration are legally identical, and they contain no trade channel or purchaser restrictions, they "are presumed to travel in the same channels of trade to the same class of purchasers." *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)(*citing CBS, Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 199 (Fed.Cir.1983)); *Double Coin Holdings, Ltd. v. Tru Dev.*, 2019 USPQ2d 377409, at *6 (TTAB 2019) (same); *see also In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (legally identical goods are presumed to travel in same channels of trade to same class of purchasers); *In re Yawata Iron & Steel Co.*, 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968) (where there are legally identical goods, the channels of trade and classes of purchasers are considered to be the same).

Thus, there is no dispute that, for purposes of determining the registrability of the applied-for marks in the EL BANDIDO YANKEE Applications, the goods and marketing channels are identical. Therefore, this factor weighs in favor of finding that confusion is likely as a matter of law.

**3. Degree of Care Likely to Be Exercised By the Consumer**

The next factor to be considered is the degree of care that a consumer is likely to exercise in purchasing the parties' products. *See Sleekcraft*, 599 F.2d at 353. The Court views the products from the standpoint of a "typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353 (*citing HMH Publ'g Co. v. Lambert*, 482 F.2d 595, 599 n.6 (9th Cir. 1973)). Where, as here, the goods of the parties are legally identical and without limitation as to the classes of consumers, the Court must presume that the targeted classes of purchasers are the same, i.e., all potential purchasers of all alcoholic beverages at all different price points. *In re Viterra Inc*., 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (finding TTAB entitled to rely on this legal presumption in determining likelihood of confusion); *see also Am. Lebanese Syrian Assoc. Charities Inc. v. Child Health Research Inst*., 101 USPQ2d 1022, 1028 (TTAB 2011)). Absent such specific consumer limitations in the registration and applications at issue, and because the actual marketplace consumers for the parties' goods with which the marks are used cannot be considered, the Court must base its analysis "on the least sophisticated potential purchasers," *Stone Lion*, 746 F. 3d at 1325.

Alcoholic beverage purchasers include not only sophisticated purchasers, but also ordinary purchasers with little sophistication. *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 457, 465 (N.D. Cal. 1991) (little doubt that wine purchasers are typically unsophisticated impulse buyers); *JL Beverage Co., LLC v. Jim Beam Brands Co*., 828 F.3d 1098, 1112 (9th Cir. 2016) (reasonable fact-finder could find consumers purchasing the vodka products are not likely to exercise a high degree of care in distinguishing between the two); *Safeway Inc. v. Rok Drinks LLC*, No. 9206703, 2020 WL 20093401, at *5 (TTAB 2020) (finding that consumers seeking Tequila are no more discriminating than the average consumer).

As such, the applicable standard of care to be applied is that which would be exercised by the least-sophisticated consumers. *See Giersch v. Scripps Networks Inc*., 90 USPQ2d 1020, 1027 (TTAB 2009). "When products are relatively low-priced and subject to impulse buying, the risk of

likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care." *Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1984, 1899 (Fed. Cir. 2000); *see also, Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Consumer care for inexpensive products is expected to be quite low" and "[l]ow consumer care . . . increases the likelihood of confusion."); *Brookfield*, 174 F.3d at 1060 ("[C]ustomers will likely exercise less care when purchasing inexpensive products, increasing the risk of confusion.").

As the goods identified in Rebel's registration and Roar's applications remain the same as at the time of the TTAB decision, the fact that the consumers at issue must be presumed to be unsophisticated is undisputed and no additional marketplace information is material to this fact, and this factor therefore favors Rebel or is neutral.

**4. Strength of Marks**

"The scope of the trademark protection" given to a mark "depends upon the strength of the mark, with stronger marks receiving greater protection than weak ones." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). "This is so because a strong mark is 'inherently distinctive' . . . and therefore it is more likely that consumers will be confused by another's use of the same or similar mark." *Id.* (*quoting Sleekcraft*, 599 F.2d at 349). A trademark's strength "is evaluated in terms of its conceptual strength and commercial strength." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).

**a. Rebel's BANDIT Mark is Conceptually Strong**

Conceptual strength assesses "the obviousness of [a mark's] connection to the good or service to which it refers." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032–33 (9th Cir. 2010). Courts determine conceptual strength by "classify[ing] a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic." *JL Beverage Co.*, 828 F.3d at 1107. Generic marks are never entitled to trademark protection; descriptive marks are protectable upon a showing of "acquired distinctiveness" (secondary meaning); and suggestive, arbitrary, and fanciful marks are inherently distinctive and thus automatically entitled to trademark protection. *Zobmondo Ent., LLC v. Falls Media, LLC*, 602

F.3d 1108, 1113 (9th Cir. 2010).

"'Arbitrary' marks are common words that have no connection with the actual product." *Surfvivor*, 406 F.3d at 631-32. The owner of an arbitrary trademark "must work hard to make consumers associate the trademark with the product." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 n. 7 (9th Cir. 1998) "This suggests that any association is the result of goodwill and deserves broad protection from potential infringers." *Id.*

The term "BANDIT" is defined as "an outlaw who lives by plunder especially . . . a member of a band of marauders". Durand Decl. ¶6, Exh. E; 7 TTABVUE 166. Rebel's BANDIT mark, "having no suggestive or descriptive connotation as applied to . . . [alcoholic beverages except beers,] must be considered a strong arbitrary mark for purposes of [Trademark Act Section 2(d)] . . . ." *In re Bercut-Vandervoort & Co.*, 229 USPQ 763, 765-766 (TTAB 1986); Durand Decl. ¶11, Exh. J at 20. An "arbitrary designation [is] deserving of a broad scope of protection against the registration of any mark used for the same or related goods that may tend to diminish its commercial value and consumer acceptance." *Jules Berman & Assoc., Inc. v. Consol. Distilled Prods., Inc*, 202 USPQ 67, 70 (TTAB 1979). Because Rebel's BANDIT mark is arbitrary, it is conceptually strong and deserves a broad scope of protection. The arbitrary nature of the BANDIT mark cannot be disputed.

**b. Rebel's BANDIT Mark is Moderately Strong in Terms of Commercial Strength**

Commercial strength, by contrast, assesses "'actual marketplace recognition.'" *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) (*quoting Brookfield Commc'ns*, 174 F.3d at 1058). With respect to commercial strength, the TTAB considered the following factors to assess whether Rebel's BANDIT mark has acquired commercial strength:

> [1] the volume of sales and advertising expenditures in connection with the goods sold under the mark [], for example, and other factors such as [2] length of time of use of the mark; [3] widespread critical assessments; [4] notice by independent sources of the products identified by the mark []; and [5] the general reputation of the products and services.

*Monster Energy Co. v. Chun Hua Lo*, 2023 USPQ2 87, at *11 (TTAB 2023) (*citing Weider Publ'ns*, 109 USPQ2d at 1354).

///

As the record before the TTAB demonstrates, Rebel provided evidence as to all of these factors related to its BANDIT mark. Durand Decl. ¶7, Exh. F at ¶¶5, 10-14; 7 TTABVUE 192-93. In an attempt to offset Rebel's evidence, Roar provided evidence of a single trademark registration for alcoholic beverages for the mark FORAJIDO and a handful of purported third-party uses of alcohol beverage marks similar to BANDIT. Durand Decl. ¶11, Exh. J at 24-29; 11 TTABVUE 148-150, 184-97 & 209-34. However, as the TTAB correctly noted, none of the evidence provided context as to the use, such as whether the purported brands were sold in the U.S., whether the use was historical or current, or whether the products were even in commercial use. Durand Decl. ¶11, Exh. J at 28-29. Accordingly, the TTAB found the evidence to be of "little value" in assessing consumer perception of the strength of the BANDIT mark. Durand Decl. ¶11, Exh. J at 28-29; *citing In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1833 (Fed. Cir. 2007) (deeming Google search results that provided very little context of the use of ASPIRINA to be "of little value in assessing the consumer public perception of the ASPIRINA mark").

Considering the evidence of record, the TTAB found Rebel's BANDIT mark to be conceptually strong but of only moderate commercial strength. The facts remain the same. There is no third-party use which evidences that Rebel's BANDIT mark is entitled to a limited scope of protection or which is probative of such a finding. Roar has not even taken any third-party discovery (or any fact discovery at all) in this current proceeding to suggest there is additional third-party evidence on this factor. Furthermore, even if there were such evidence, a finding of summary judgment can be supported based on the other *Sleekcraft* factors without finding that the BANDIT mark is famous or strong, and therefore any additional evidence which might be submitted by Roar on this factor does not raise a genuine issue of material fact so as to preclude summary judgment. *See Meier's Wine Cellars, Inc. v. Meyer Intellectual Properties Limited*, Cancellation No. 9204483, 2008 WL 902837, at *7 (TTAB 2008) (*citing Kellogg Co. v. Pack-em Enterprises Inc.*, 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991)) (granting summary judgment to plaintiff in trademark cancellation proceeding without considering evidence as to strength of the mark).

///

///

**5. Similarity of Marks**

To assess the similarity of the marks, this Circuit relies on the following general principles: "[s]imilarity is best adjudged by appearance, sound, and meaning,'" *Entrepreneur Media*, 279 F.3d at 1144, and "similarities are weighed more heavily than differences." *Fortune Dynamic*, 618 F.3d at 1032. "Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc.*, 202 F.3d at 1206.

In considering the marks' similarities, the Court does not dissect the marks, but considers the overall impression they give to consumers. *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, (W.D. Wash. 2003), aff'd, 376 F.3d 894 (9th Cir. 2004) ("[W]hat is critical is the overall appearance of the mark . . . , not a deconstructionist view of the different components of the marks"). Additionally, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *In re i.am.symbolic*, 866 F.3d 1315, 123 USPQ2d 1744, 1751 (Fed. Cir. 2017) (*quoting Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (internal quotation marks omitted)); *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980) ("in trademark law . . . 'side-by-side' comparison is not the test"). The focus is on the recollection of the average purchaser who normally retains a general, rather than a specific, impression of trademarks. *In re Assoc. of the U.S. Army*, 85 USPQ2d 1264, 1268 (TTAB 2007); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975); *see also In re St. Helena Hosp.*, 774 F.3d 747,113 USPQ2d 1082, 1085 ("marks must be considered in light of the fallibility of memory and not on the basis of side-by-side comparison") (cleaned up; citation omitted).

So long as marks are analyzed as a whole, it is not improper to "determine that, 'for rational reasons,' … [a factfinder] give 'more or less weight … to a particular feature of the mark[s]' provided that … [its] ultimate conclusion regarding … likelihood of confusion 'rests on [a] consideration of the marks in their entireties.'" *Quiktrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 2021 USPQ2d 35, at *2-3 (Fed. Cir. 2021) (*quoting Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 56 USPQ2d 1351, 1354 (Fed. Cir. 2000) and *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749,

751 (Fed. Cir. 1985); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291-1292 (9th Cir. 1992) (shared dominant term GALLO sufficient evidence to support a finding of similarity in sight, sound and meaning between composite marks). However, it is important to remember that no element of the parties' marks can be ignored, including their design elements. *See Massey Junior Coll., Inc. v. Fashion Inst. of Tech.*, 492 F.2d 1399, 181 USPQ 272, 276 (CCPA 1974) (finding that the design portion of the challenged mark, which included a distinctive blue ribbon, created a different commercial impression than the prior mark and that the design portion could not be ignored since the marks must be considered in their entireties).

Furthermore, in cases such as this, where the parties' goods are legally identical (*see*, Durand Decl. ¶¶2-4, 11, Exhs. A-C, J at 15), "the degree of similarity necessary to support a conclusion of likely confusion declines." *Century 21 Real Est. Corp*, 970 F.2d at 877; *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) "A diminished standard of similarity is . . . applied when comparing the marks of closely related goods."); *Guess?, Inc. v. Tres Hermanos*, 993 F. Supp. 1277, 1281 (C.D. Cal. 1997) ("[A] lesser degree of similarity between two parties' marks is required when the marks are applied to identical goods or services.").

**a. Rebel's BANDIT Mark and Roar's EL BANDIDO YANKEE and Design Mark are Confusingly Similar**

Because Rebel's BANDIT mark is registered in standard characters, it must be considered "regardless of font style, size, or color." *Monster Energy*, 2023 USPQ2d 87, at *17 (*quoting Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1258-59 (Fed. Cir. 2011)). In other words, Rebel has an unfettered right to use its BANDIT mark in different font styles and colors, including the right to display its BANDIT mark in the same stylization and color scheme as shown in Roar's EL BANDIDO YANKEE and Design Mark. *Id.* (*citing Cunningham*, 55 USPQ2d at 1847-48).

///

///

///

///

Roar's EL BANDIDO YANKEE and Design Mark is:




The TTAB correctly found that the words "EL BANDIDO" "constitute [ ] 'the dominant feature[s]' in the commercial impression created by . . . [Roar's] mark" because:

- They appear as the first and largest words in the mark, *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) Durand Decl. ¶11, Exh. J at 36;
- They stand out within the mark, in size, position and shading (i.e., they appear in the largest design and font size, within the center of the mark, and in the darkest print – such that it most notably catches the consumer's eye), Durand Decl. ¶11, Exh. J at 36; and
- The curved line under the terms "EL BANDIDO" divides the composite mark into the elements "EL BANDIDO" and the "BANDIT" image on the one hand, and the term "YANKEE" with the other graphical and textual material on the other, Durand Decl. ¶11, Exh. J at 36.

Furthermore, the TTAB correctly found that the term "YANKEE" will not be perceived as part of the dominant elements of the mark because:

- It appears smaller than the terms "EL BANDIDO;"
- It appears in a lighter font color than the terms "EL BANDIDO;"
- It is separated from the terms "EL BANDIDO" by a curved line; and

///

///

- It functions as an adjective modifying the noun "EL BANDIDO." Durand Decl. ¶11, Exh. J at 37; *see also Stone Lion*, 746 F.3d at1320 (affirming Board's finding that the noun LION was the dominant part of applicant's mark STONE LION CAPITAL).

Durand Decl. ¶11, Exh. J at 37.

Additionally, the TTAB correctly found that consumers are likely to shorten Roar's mark to "EL BANDIDO" or simply "BANDIDO," dropping the adjective "YANKEE," as evidenced by Roar regularly referring to its products as "EL BANDIDO" and "BANDIDO(S)" on its website and Twitter account. Durand Decl. ¶8, Exh. G; 7 TTABVUE 167-190 (examples from Applicant's website include "Break Out the Bandido," "A Few Bandidos Walk into a Bar," "El Bandido Tequila," "Bandidos Drink Responsibly," "Bandidos Give Back," "Bandidos Give Boldly," "Shop Like a Bandido," "Become a Bandido," "Leave a Bandido," "El Bandido," "El Bandido Spirit," "Blushing Bandido," "Fiery Bandido," "Be a True Tequila Bandido," "#BandidoBrigade," and from Applicant's Twitter account include "Bandido and Happy Hour . . . ," "Bandidos Always Ride Shotgun," "Hand Over the Bandido," "Celebrate Labor Day the Bandido Way," "Break Out the Bandido," "Out Here all you need is . . . an El Bandido to Appreciate the Day".) As such, the TTAB correctly concluded that it could not discount "the penchant of consumers to shorten marks." *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1961 (TTAB 2016); *see, e.g., Hunter Indus., Inc. v. The Toro Co.*, 110 USPQ2d 1651, 1661 (TTAB 2014) (finding "applicant's mark PRECISION would appear to prospective purchasers to be a shortened form of opposer's mark PRECISION DISTRIBUTION CONTROL.").

As to meaning and commercial impression, the term "BANDIT" is an "outlaw who lives by plunder, especially . . . a member of a band of marauders," [Durand Decl. ¶6, Exh. E; 7 TTABVUE 166], and the Spanish terms "EL BANDIDO" translate into English as "The Bandit". Durand Decl. ¶9, Exh. H; 7 TTABVUE 159.[6] Additionally, as the TTAB pointed out, "BANDIDO" is also an

---

[6] "It is well-recognized that the definite article 'THE' is insignificant as a source identifier or differentiator between marks." Durand Decl. ¶11, Exh. J at 38 n.55; *In re Thor Tech, Inc.*, 90 USPQ2d 1634, 1635 (TTAB 2009); *In re Narwood Prods., Inc.*, 223 USPQ 1034, 1034 (TTAB 1984); *see also In re Central Soya Co., Inc.*, 220 USPQ 914, 916 (TTAB 1984) ("The Spanish article 'La,' which means 'The,' cannot be said to have any distinguishing effect.").

English term meaning "an outlaw especially of Mexican extraction or origin." Durand Decl. ¶11, Exh. J at 38 (MERRIAM-WEBSTER definition of "BANDIDO" (https://www.merriam-webster.com/dictionary/bandido, last viewed July 11, 2023).

The addition of the term "EL" in Applicant's Mark is not significant because it translates to "the," which has been found to have little source identifying significance. *See Jay-Zee, Inc. v. Hartfield-Zodys, Inc.* 207 USPQ 269 (TTAB 1980). Here, as the TTAB acknowledged, "EL" is not an English term, but it would be recognized by English speakers when combined with a term that has the appearance of a Spanish term and has an association with Mexico, as meaning "the." Durand Decl. ¶11, Exh. At 38. As such, the TTAB correctly afforded "BANDIDO" its English meaning, i.e., "an outlaw especially of Mexican extraction or origin," with "EL" giving it a Spanish flair because of the association between Roar's goods and Mexico. EFC 1-1 at 39. The TTAB also rightly concluded that "EL" is not an unfamiliar word to U.S. consumers (for example, "El Cheap," "El Paso," "El Dorado," and "El Niño). Durand Decl. ¶11, Exh. J at 38. *Cf. In re Johanna Farms, Inc.*, 222 USPQ 607, 617 (TTAB 1984) ("Th[e] commonness of the French definite article [LA] … pervades our commercial vocabulary and the advertising of certain categories of products … abounds in uses of 'la' and 'le.' Consequently, the presence of the article in LA YOGURT is not unique in any American purchaser's experience and, whether translated or not, does not, in our view, transform the generic term 'yogurt' into a term [LA YOGURT] capable of acquiring distinctiveness as a trademark.").

The TTAB also correctly found that the terms "YANKEE," "TEQUILA," "COMPANY" and "BLANCO" in Roar's EL BANDIDO YANKEE and Design Mark are merely descriptive terms, at best. Durand Decl. ¶11, Exh. J at 39. The term "YANKEE" is an English term meaning "a native or inhabitant of . . . the U.S." Durand Decl. ¶11, Exh. J at 39 (MERRIAM-WEBSTER definition of "YANKEE" (https:/www.merriam-webster.com/dictionary/Yankee, last viewed July 18, 2023). The terms "TEQUILA," "COMPANY" and "BLANCO" are disclaimed by Roar as descriptive in its trademark application. Durand Decl. ¶¶3-4, Exhs. B-C. It is well-settled that disclaimed, descriptive matter will generally have less significance in likelihood of confusion determinations. *See Cunningham*, 55 USPQ2d at 1846 ("Regarding descriptive terms, this court has noted that the

descriptive component of a mark may be given little weight in reaching a conclusion of the likelihood of confusion."); *In re Code Consultants, Inc.*, 60 USPQ2d 1699, 1702 (TTAB 2001) (noting that disclaimed matter, "while not ignored in the analysis," is often "less significant in creating the mark's commercial impression").

Roar's EL BANDIDO YANKEE and Design Mark also features a prominent human image. Durand Decl. ¶4, Exh. C. The application contains the following partial description: "The mark consists of the upper chest, neck and head of a person that is wearing a western hat and bandana which covers the person's nose, mouth, chin and most of the neck." Durand Decl. ¶4, Exh. C. As such, the TTAB correctly found that the person featured in Roar's mark is a "bandit" and that consumers would view it as such. Durand Decl. ¶11, Exh. J at 41-42. An internet image search using the Google search engine for the term "bandit" returns numerous images of people wearing masks exactly like the person depicted in Roar's EL BANDIDO and Design Mark. Durand Decl. ¶10, Exh. I; 7 TTABVUE 162-63.[7] The following images are representative of the results disclosed by Rebel's Google images search:




Durand Decl. ¶10, Exh. I; 7 TTABVUE 162-63.

"[I]t is a well[-] established principle of trademark law that a picture or design and the word which describes the design are legal equivalents that must be treated as such . . ." *Thistle Class Ass'n*

[7] The results of Rebel's Google Images "BANDIT" search provide sufficient context for the limited purpose introduced by Rebel, i.e., Rebel's search results show images of "bandits." Durand Decl. ¶11, Exh. J at 42 n.61; *see also In re New York Times Co.*, 2023 USPQ2d 392, at *22 (TTAB 2023) (accepting Google search results where "Applicant has submitted the search results for a narrow purpose, to show merely that consumers recognize its print columns as possessing their own viable and separate existence."); *In re Consumer Protection Firm PLLC*, 2021 USPQ2d 238, at *21 n.28 (TTAB 2021) ("Although it may not be appropriate in other cases, here the [Google] search results, which we consider only for what they show on their face, provide sufficient context such that we afford this evidence a modicum of probative value regarding the positions for which they were cited.").

*v. Douglass & McLeod, Inc.*, 198 USPQ 504, 511 (TTAB 1978). As such, and as the TTAB correctly found, the image of the "bandit" in Roar's mark "emphasizes and reinforces the meaning of the words 'EL BANDIDO' as 'outlaw,' and . . . the words and design should be taken together and combine to form the overall commercial impression of the mark because they dominate over the other elements of Roar's mark." Durand Decl. ¶11, Exh. J 42-43.

The TTAB correctly found that Rebel's mark "BANDIT" and the dominant term "EL BANDIDO" in Roar's composite mark shared the similar meaning, namely, "outlaw," and that the design element in Roar's mark reinforces this meaning. Durand Decl. ¶11, Exh. J at 43. Considering Roar's composite mark in its entirety, the TTAB found that the additional terms "YANKEE," "TEQUILA COMPANY" and "BLANCO" do not sufficiently distinguish the marks and correctly concluded that the parties' marks have similar commercial impressions. Durand Decl. ¶11, Exh. J at 43.

Because the parties' marks convey the same or a very similar meaning and have very similar commercial impressions, the TTAB concluded that such similarities outweighed any differences in sound or appearance of the marks. Durand Decl. ¶11, Exh. J at 43; *see also Hancock v. Am. Steel & Wire Co. of N.J.*, 203 F.2d 737, 97 USPQ 330, 332 (CCPA 1953) (the applicant's mark TORNADO displayed in association with a pictorial representation of a whirlwind was found likely to be confused with the prior mark CYCLONE, both used for wire fencing, notwithstanding their differences in appearance and sound). As such, the TTAB correctly concluded that the similarities between Rebel's BANDIT mark and Roar's EL BANDIDO YANKEE TEQUILA COMPANY BLANCO composite mark weigh in favor of a finding that confusion is likely. The facts which support this finding cannot be disputed in any material way.

**b. Rebel's BANDIT Mark and Roar's EL BANDIDO YANKEE Mark are Confusingly Similar**

The TTAB correctly found that "EL BANDIDO," as the first words to appear in Applicant's word mark, "constitute[] 'the dominant feature' in the commercial impression created by the mark." *Palm Bay Imps.*, 73 USPQ2d at 1692. As is the case with the EL BANDIDO YANKEE and Design Mark as discussed above, "EL BANDIDO" is also the dominant feature of Applicant's EL

BANDIDO YANKEE word mark because EL BANDIDO is the noun in the phrase EL BANDIDO YANKEE, with the term "YANKEE" functioning as an adjective (*see, Stone Lion*, 746 F.3d at1320 (LION dominant part of STONE LION CAPITAL)), and because consumers are likely to shorten Applicant's mark simply to "EL BANDIDO" or just "BANDIDO." *Hunter Indus*., 110 USPQ2d at 1661 (PRECISION would appear to prospective purchasers to be a shortened form of opposer's mark PRECISION DISTRIBUTION CONTROL).

With respect to its word mark application, Roar could choose to display "EL BANDIDO YANKEE" in the same manner as it does in its composite mark (discussed above), emphasizing "EL BANDIDO" and minimizing "YANKEE." *Phillips Petroleum Co. v. C. J. Webb, Inc.*, 170 USPQ 35, 36 (CCPA 1971) ("The drawing in the instant application shows the mark typed in capital letters, and under … the Trademark Rules of Practice this means that … [Applicant's] application is not limited to the mark depicted in any special form.").

Further, as is the case with the EL BANDIDO YANKEE and Design Mark, the "EL" portion of the EL BANDIDO YANKEE word mark would still be recognized by English speakers when combined with a term that has the appearance of a Spanish term and has an association with Mexico, as meaning "the" even though it is not an English term. Durand Decl. ¶11, Exh. J at 45. In the context of Roar's overall mark, as the TTAB correctly noted, "BANDIDO" should be afforded its English meaning of BANDIT, with "EL" giving it a Spanish flair. Durand Decl. ¶11, Exh. J at 45. As discussed above, "EL" is not an unfamiliar term to U.S. consumers in their everyday vocabulary; and whether or not it is translated by consumers has little significance in forming the commercial impression of Roar's mark. *Cf. In re Johanna Farms*, 222 USPQ at 617.

The TTAB correctly concluded that the parties' marks convey the same or a very similar meaning, have very similar commercial impressions, and that such similarities outweigh any differences in sound or appearance of the marks. Durand Decl. ¶11 at 45; *see also Hancock v. Am. Steel & Wire*, 97 USPQ at 332. As such, the similarities between Rebel's BANDIT mark and Roar's EL BANDIDO YANKEE word mark weigh in favor of a finding that confusion is likely. The facts which support this finding cannot be disputed in any material way.

///



dp&f LAW

**6. Actual Confusion**

The sixth *Sleekcraft* factor is whether there is actual confusion between the marks. *Sleekcraft*, 599 F.2d at 352. "Failure to show actual confusion does not weigh against likelihood of confusion, but instead is neutral in the analysis." *Clarke v. TNSG Health Co.*, No. 2:21-CV-03463-HDV-RAO, 2024 WL 2794103, at *5, n.3 (C.D. Cal. May 15, 2024); *see also Pom Wonderful* 775 F.3d at 1131. "Because of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive." *Sleekcraft,* 599 F.2d at 353*; see also Barbaras Bakery, Inc. v. Barbara Landesman*, 82 U.S.P.Q.2d 1283, 1287 (TTAB 2007) ("In the absence of a significant opportunity for actual confusion to have occurred, the absence of actual confusion is of little probative value"). "Consequently, this factor is weighed heavily only when there is evidence of past confusion or, perhaps, when the particular circumstances indicate such evidence should have been available." *Id.*; *see also New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Neither actual confusion nor intent are necessary to a finding of [l]ikelihood of confusion."). Given that there is no evidence of actual confusion, the TTAB correctly found that this factor is neutral.

**7. Weighing the Likelihood of Confusion Factors**

Weighing the factors for which the parties had introduced evidence and argument pursuant to *In re Charger Ventures LLC*, 2023 USPQ2d 451, at *7 (Fed. Cir. 2023), the TTAB found that the following factors weighed in favor of finding that confusion is likely:

- That the parties' respective goods are legally identical, Durand Decl. ¶11, Exh. J at 50;
- The parties' trade channels and target consumers overlap, Durand Decl. ¶11, Exh. J at 50;
- That Rebel's BANDIT mark is inherently strong with moderate commercial strength, Durand Decl. ¶11, Exh. J at 50; and
- That the parties' marks are similar, Durand Decl. ¶11, Exh. J at 50.

The TTAB also found that the following factors were neutral in the likelihood of confusion analysis:

- Consumer sophistication, Durand Decl. ¶11, Exh. J at 50;

- Purchasing conditions, Durand Decl. ¶11, Exh. J at 50;
- The absence of actual confusion, Durand Decl. ¶11, Exh. J at 50; and
- The extent of potential confusion likely to occur in the future, Durand Decl. ¶11, Exh. J at 50.

Balancing the factors for which it had evidence and argument, the TTAB correctly found that confusion is likely. Durand Decl. ¶11, Exh. J at 50. On this review of the TTAB decision, there are no material facts which would dictate a change to the TTAB's decision under either standard of review. As such, a full trial in this matter is unnecessary and would be a waste of judicial resources, and the Court should grant this motion for summary judgment as to the refusal of the EL BANDIDO YANKEE Applications based on the issue of likelihood of confusion as between BANDIT as registered in the BANDIT Registration and the EL BANDIDO YANKEE Marks as applied for in the EL BANDIDO YANKEE Applications.

## V. CONCLUSION

For the foregoing reasons, the Court should grant Rebel's motion for summary judgment.

DATED: July 11, 2024

DICKENSON, PEATMAN & FOGARTY

By: ______________________________

J. Scott Gerien
sgerien@dpf-law.com
Joy L. Durand
jdurand@dpf-law.com
1500 First Street, Suite 200
Napa, CA 94559
Tel. No.: (707) 261-7000

Attorneys for Defendant,
Rebel Wine Co., LLC